**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **MILEIDYS DIAZ MONTERO** | **CIVIL ACTION NO. 26-1657** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE JERRY EDWARDS, JR.** |
| **MELLISSA HARPER, ET AL.** | **MAG. JUDGE CAROL B. WHITEHURST** |

# REPORT AND RECOMMENDATION

Petitioner Mileidys Diaz Montero,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 9]. For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of Cuba. She entered the United States of America without inspection in 2023. [doc. # 1-2, p. 2]. On July 10, 2025, Petitioner was taken into immigration custody. [doc. # 1, p. 4]. On March 20, 2026, an immigration

---

[1] Petitioner's "A Number" is 244-209-808.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

judge ordered Petitioner removed to Cuba. [doc. # 9-2]. Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"); the appeal remains pending. [doc. # 9-3].

Petitioner filed this proceeding on May 14, 2026. [doc. # 1]. She claims that the Government has failed to afford her a bond hearing or custody redetermination hearing, violating the Immigration and Nationality Act and her right to substantive due process. *Id.* at 6. She maintains that she should be detained under 8 U.S.C. § 1226(a) and is therefore entitled to a bond hearing. [doc. # 1-2, p. 10]. She has not been charged with or convicted of any crimes. *Id.*

Petitioner also claims that the Government violated her right to procedural due process by detaining her without a bond hearing and by failing to provide her notice and opportunity to be heard. [doc. # 1-2, p. 19].

Respondents opposed the petition on July 16, 2026. [doc. # 9].

## <u>Law and Analysis</u>

### I. 8 U.S.C. § 1225 Vs. 8 U.S.C. § 1226

The Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th 494, 502 (5th Cir. 2026). In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8

U.S.C. § 1225. *Id.* The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A). *Id.*

Here, *Buenrostro-Mendez* governs Petitioner's detention status: she is detained under Section 1225. Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." Under Section 1225(b)(1)(B)(iii)(IV) (emphasis added), "Any alien subject to the procedures under this clause *shall be detained* pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Under section 1225(b)(2)(A) (emphasis added), "Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."

Plainly, Section 1225 does not authorize release on bond. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Petitioner is, therefore, not statutorily entitled to bond or a bond hearing. The Court should dismiss her statutory claim accordingly.

**II. Due Process**

Petitioner claims that the Due Process Clause entitles her to a bond hearing. In *Dzheison Ford v. Timothy Ducote, et al*., 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear claim. Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum. In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause. Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens. Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" 140 S. Ct. at 1977.
>
> In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute. Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights. In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.
>
> Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, two aliens were held pending removal

> after final order of deportation. However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a). The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported. *Id*. at 702.
>
> The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."
>
> Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[3] As in *Ford*, Petitioner's detention is not indefinite or potentially permanent. On March 20, 2026, an immigration judge ordered Petitioner removed to Cuba. [doc. # 9-2]. Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"); the appeal remains pending. [doc. # 9-3]. Petitioner's appeal will likely extend her detention until the BIA

---

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

decides the appeal. Petitioner's detention will likely end (i) when her order of removal becomes final (if the BIA affirms the order of removal or dismisses Petitioner's appeal) and the Government removes her or (ii) if the BIA rules in Petitioner's favor. Accordingly, the Court should deny Petitioner's claim. Petitioner may of course re-file her claim should her detention become indefinite or potentially permanent.

**III. Procedural Due Process**

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. CONST. AMEND. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir.

2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . .").

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the first factor above weighs in Petitioner's favor as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542

U.S. 507, 259 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). To reiterate, "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Living in the United States for approximately three years (albeit, not on parole, bond, or other supervision), Petitioner established a liberty interest. *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (noting that "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these [aliens] from deprivation of life, liberty, or property without due process of law" whether they are here unlawfully or not). Petitioner has established a life in this country. Terminating her valued liberty likely inflicted a grievous loss. *See generally Lopez Miranda v. Flores*, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status."). That said, Petitioner always knew that she was in the United States without permission, which qualifies her liberty interest to a degree.[4]

[4] *See generally Henderson v. Simms*, 223 F.3d 267, 274 (4th Cir. 2000) ("A prisoner who is mistakenly released does not have a protected liberty interest because, unlike a parolee, he does not have a 'legitimate claim of entitlement' to freedom.").

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—leans in Respondents' favor. Petitioner does not offer any reason why not providing process to her before she was detained—i.e., before the Government terminated her liberty interest—risked error. The Government has provided process after detaining her in the form of a Notice to Appear, the ability to respond to the Government's motions, the opportunity to be heard in a hearing or via motion(s), the opportunity to present evidence, and an appeal. She has received opportunities to be heard on relevant issues such as her identity, whether she is "an alien present in the United States who has not been admitted or paroled,"[5] the country of which she is a citizen, the country or countries which might accept her, when she entered the country, and whether she is entitled to asylum or other protection.

Petitioner appears to seek only post-deprivation process in the form of a bond hearing. She appears to argue that the potential error is detaining an individual who is not a flight risk or a danger to society. However, as explained above Respondents are statutorily required to detain her under 8 U.S.C. § 1225. Thus, even if a neutral decisionmaker determined that she was not a flight risk or a danger, Respondents would still detain her.

---

[5] [doc. # 9-1].

In *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003), the statute at issue required all sex offenders to register so that their information could be published. The respondent, a convicted sex offender, argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." *Id.* at 6. Rejecting the argument, the Court opined, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme.*" *Id.* at 8 (emphasis added). Whether the respondent was not dangerous was "of no consequence" under the statute because it required registration of *all* convicted sex offenders. *Id.* at 7.

Here, whether Petitioner is a risk of flight or danger is largely irrelevant to whether the Government must—under relevant statutory and regulatory schemes—detain her and remove her.[6] And as explained above the Government has already provided process (and is providing process) for relevant issues. *See Clavijo v.*

[6] To be sure, noncitizens detained under 8 U.S.C. § 1225(b) *may* be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding." *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b). Thus, a determination that Petitioner is neither a flight risk nor a danger is not completely irrelevant. Here, however, Petitioner does not contend that she is entitled to release for urgent humanitarian reasons or for significant public benefit. And even if she did, she had and has the opportunity to present such a contention in her removal proceedings. *If* the Secretary of Homeland Security agreed, *then* Petitioner could attempt to demonstrate that she is neither a security risk nor a risk of absconding.

*Thompson, et al.*, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("8 USC § 1225(b)(2)(A), *mandates* detention of those falling within the definition of 'applicants for admission' without regard to any individualized custody determination concerning dangerousness or flight risk. And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to 'applicants for admission' like Petitioner. A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute."). All of this is to say that there is little, if any, risk of error in terminating her liberty without providing her a post-deprivation bond hearing.

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—weighs in the Government's favor. The Government has a significant interest in protecting the community and preventing flight. Petitioner eluded immigration authorities when she entered the United States, which demonstrates that she is a possible flight risk. And to the extent Petitioner claims she did not receive pre-deprivation process, providing it to her and others who entered the United States without permission—i.e., providing notice of the intent to detain them *before* detaining them—would create an appreciable risk of evasion before arrest/detention.

Accordingly, the Government has not violated Petitioner's right to procedural due process. The Court should dismiss this claim.

## Recommendation

For reasons above, **IT IS RECOMMENDED** that Petitioner Mileidys Diaz Montero's petition be **DENIED AND DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lafayette, Louisiana, this 4th day of August, 2026.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE